Filed 2/13/24  In re A.S. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.S. et al., Persons Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. P.S., Defendant and Appellant. | A168584 (Sonoma County Super. Ct. Nos. 6459, 6460) |

Paulina S. appeals the termination of her parental rights concerning her now four-and-a-half-year-old daughter A.S. and now three-year-old son G.S.

She raises a single issue on appeal.  She asserts that during a hearing at which the juvenile court scheduled a second hearing under Welfare and Institutions Code section 366.26 (after having granted reconsideration of its initial section 366.26 ruling terminating her parental rights), the juvenile court gave her "false legal assurances" it would not terminate her parental rights but then did so at the second section 366.26 hearing.  She asserts this

1

prejudiced her, because she did not attend the new section 366.26 hearing and had she done so, she could have presented evidence to establish the existence of a beneficial parent-child relationship and prevent the termination of her parental rights (see generally *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*).

Mother's sole claim of legal error is not supported by the record. We will affirm the order terminating her parental rights.

## BACKGROUND

A.S. and G.S. were removed from mother's custody at ages two years and ten months, respectively, because of severe domestic violence perpetrated against mother by G.S.'s father for at least ten months that resulted in his arrest. Both he and mother struggled with methamphetamine use, although at the time mother claimed to have been sober for over two years. The children were placed together in the home of mother's sister and brother-in-law where they would remain throughout the proceedings. The juvenile court sustained allegations the children were at risk due to mother's inability to protect them from exposure to domestic violence and serious emotional damage and inability to provide for their support. Mother received 14 months of reunification services but was unable to reunify with her children, principally because she had not consistently engaged in services and had stopped submitting to drug testing.

The court held a section 366.26 hearing on June 15, 2023, at which point the children were ages four and two. The section 366.26 report filed by the Sonoma County Human Services Department ("the Department") recommended terminating parental rights to free the children for adoption by their aunt and uncle. The couple was committed to raising them, and the

children had been doing extremely well in their relatives' care and had become emotionally attached to them.

Mother was not present at the section 366.26 hearing. Mother's counsel stated she had no direction from mother, and asked for a continuance so she could confer with mother "as to whether or not she would object" to the termination of her parental rights "given that she does satisfy, at least under Caden C., she's had consistent and regular visitation," but "I don't know the bond." A question was raised as to whether mother had received proper notice of the hearing, following which the court announced its intention to proceed, adopted the findings and orders, terminated her parental rights over both children, ordered adoption as the permanent plan and calendared a permanent plan hearing.

Ten days later, mother filed a written motion for reconsideration asking the court to reconsider its order and set the matter for a contested section 366.26 so that she could put on unspecified evidence, arguing she did not receive proper notice of the hearing.

The court calendared mother's reconsideration motion for a hearing, which took place on July 6, 2023, and mother attended. This is the hearing at which the juvenile court made comments that are the basis of mother's appeal, and so we summarize it in some detail to provide context.

The July 6, 2023 reconsideration hearing opened with the court asking mother about her present relationship with her sister (the children's caregiver) and some recent conflict between them. Mother explained their conflict had been resolved and that she had resumed supervised visitation with the children.

The court then turned to the subject of mother's reconsideration motion, and in the following quoted portions of the record we italicize the comments to which mother now objects:

"THE COURT: All right. So you've been in this process now for quite a while and you're asking me to reconsider what should happen with your children. [¶] Now as your attorney will tell you, . . . , legally I cannot return your children to you. That is not within what the Legislature says I can do at this hearing. [¶] So the Legislature said there's only three things that I can do. I can free the children for adoption, I can have the children in a guardianship or they can be in foster care until they turn 18. [¶] Being in foster care is usually not a good option, especially for younger children. The law states that I have to start at adoption. And only if I rule out adoption can I move to a guardianship.

"So for the adoption, the question is, are your children adoptable? You did—you raised good children, so your children are loving, kind kids, so there's no shortage of people that would like to adopt them. [¶] So that's there, they're adoptable. [¶] . . . I think your sister is willing to adopt. Again, legally you can't have the children, so your sister's willing to adopt, your children are adoptable and adoption is the best plan.

"So in order to free your children for adoption, I have to terminate your parental rights but note the words I used. *I have to terminate your parental rights, but you are mom. I can't—I can't change that. I wouldn't want to change that.* [¶] *You're mom, you're always going to be mom, but legally your children can be adopted and the auntie can also be a mom. That's the adopted mom. You have the adopted mom. You have the biological mom. So you're both mothers. I can't and wouldn't terminate your right that you're mother because you are. There's no doubt about that.* [¶] *But the law requires that if*

4

*your children are adoptable, someone wants to adopt them, I have to go down*
*that road, absent a legal exception, and we don't see any here.*

'So that's kind of where we are.  I know that's not what you want it to be, but legally, that's what I have to do."

The court solicited the views of counsel for the minors and the Department, both of whom supported terminating parental rights to allow the adoption to go forward.

The court then told mother, "So . . . that's where we are," told mother she could confer with her counsel "and I will listen to you," and that "I would listen to witnesses that you want me to hear."  The court reiterated that its three options were either adoption, guardianship or foster care, and reiterated that "but again, legally, I have to go with adoption unless there's some reason I can't and I don't know of any reasons why I can't and because I can, the Legislature says I must."

The court then instructed mother's counsel to confer with her and a brief recess was taken.

After the recess, mother's counsel raised the reconsideration motion and reiterated that mother had not received notice of the prior hearing.  The court indicated it had granted the motion ("We've moved past that").  Mother's counsel was then asked about mother's wishes and a colloquy ensued about holding an evidentiary hearing[1]:

"THE COURT:  What does mom want to do?

"[MOTHER'S COUNSEL]:  *Mom would like a 26, contested 26 hearing where she can put on evidence.*

"THE COURT:  What evidence does she want to put on?

---

[1]  We italicize portions of this colloquy.

"[MOTHER'S COUNSEL]:  I believe the evidence will show she has been consistently visiting the children, which is one of the elements for, you know, for a 26, all right. [¶]  *In terms of we're going for the parent bond exception*, all right?

"[THE COURT]:  Okay.  And how often does your client visit with the children?

"[MOTHER'S COUNSEL]:  I believe weekly.

"THE COURT:  And for how long?

"[MOTHER'S COUNSEL]:  A long time.

"THE COURT:  We look at how young the children were when they came into the system.  *I would love to hear from mother about the bond that she has with her children and if we should or should not terminate that bond by terminating her parental rights.* [¶] *Do you have questions for the social worker*?

"[MOTHER'S COUNSEL]:  *I would think so.*

"THE COURT:  I don't know.  You're the one contesting the case.

"[MOTHER'S COUNSEL]:  Well I think—the answer is yes, she would like to have a voice.  She feels like—

"THE COURT:  I am just asking.  I am already granting the hearing.

"[MOTHER'S COUNSEL]:  Are we having the hearing now or going forward?

"THE COURT:  I am granting.  I am going to set a hearing.  I need to figure out how much time I need for the hearing.  *I know mom wants to testify.*

"[MOTHER'S COUNSEL]:  *Mom wants to testify.*"

Mother's counsel stated she didn't know what evidence mother would want to present, including whether mother would ask the social worker to

6

testify, and thus was unable to give a time estimate for the contested hearing. Accordingly, the court calendared it for a one-half day hearing 11 days later, on July 24th, 2023.

Mother did not attend the second section 366.26 hearing on July 24. At that subsequent hearing, the court stated it had granted her motion for reconsideration and had been "looking forward to hearing from mom today about her position as to the level and nature of the visits."

Mother's counsel reported he had not been able to contact mother, acknowledged she had been present and noticed for the hearing and did not know why she was not present. The social worker was present but not called as a witness. After brief comments from counsel for the minors and counsel for the Department, and no further comments from mother's counsel, the juvenile court adopted findings and orders a second time terminating mother's parental rights and ordering adoption as the children's permanent plan.

## DISCUSSION

Mother now timely appeals, arguing that the juvenile court committed legal error by falsely assuring her at the July 6, 2023 reconsideration hearing that it would not terminate her parental rights but then did so at the subsequent section 366.26 hearing, which she contends prejudiced her because "had [she] been present, she could have proved the affirmative defense to terminating [her parental] rights" under *Caden C.*[2] The parties agree mother satisfied the regular visitation element of this exception. And mother contends that "with additional testimony, [she] could have proved"

---

[2] We presume the parties' familiarity with the elements of the beneficial parent-child exception, which is accurately discussed in the briefing.

7

the other two elements as well, which examine the nature and strength of the children's attachment to her and the potential detriment of severing that relationship.

Mother's claim of legal error is not supported by the record.

The court did not assure her it would not terminate her parental rights. It repeatedly told her that it intended to do so unless she persuaded it to do otherwise. The court said so in a preface to the very comments she now challenges as having misled her. It began those comments by telling her: "So *in order to free your children for adoption, I have to terminate your parental rights* but note the words I used. *I have to terminate your parental rights,* but you are mom. I can't—I can't change that." It then told her that even though it couldn't and wouldn't terminate her "right" as a "biological mom," "absent a legal exception" it would have to order adoption as the children's permanent plan. After mother conferred with her counsel and then asked for an evidentiary hearing, the court again told her that it would be deciding whether to terminate her parental rights, explaining: "I would love to hear from mother about the bond that she has with her children *and if we should or should not terminate that bond by terminating her parental rights*." In context, the comments mother points to as an assurance the court would not terminate her parental rights were simply an expression of the court's recognition of her status as a *biological* parent.

The unstated premise of mother's argument also is not supported by the record. Her appellate claim, although not expressly stated, is that the juvenile court misled her into believing that it was *unnecessary* for her to attend the second 366.26 hearing held on July 24, 2023, and put on any further evidence to avoid the termination of her parental rights, and therefore she did not attend that second hearing.

8

In the first place, any such assumption on mother's part was unreasonable. *She* asked for a do-over of the section 366.26 hearing, because she had not attended the first one. The whole point of her request was to enable her to contest the termination of her parental rights including by putting on evidence. Her reconsideration motion stated she "wanted to have the opportunity to present evidence and contest the ruling" terminating her parental rights. Thus her motion asked "the court to reconsider its order and put the matter on for a contested .26 hearing." Her motion elaborated: "if [mother] had been properly noticed and appeared [at the initial section 366.26 hearing], she would have contested the termination and a date [would have been] set for a contested 366.26 hearing. Given that a little over a week has passed, the court could grant this motion for reconsideration and set a calendar date which would be the same time more or less as if the court had set it last week." The motion concluded by asking the court to "reconsider its previous denial of Mother's request for a contested hearing pursuant to section 366.26."

Mother's unstated premise that she assumed it would be unnecessary for her to attend the July 24 hearing is also defied by the record. After the court made the comments that supposedly misled her, she conferred with her lawyer off the record and then her lawyer told the court—twice—that mother wanted a contested section 366.26 hearing *to put on evidence.* In response the juvenile court told mother it *wanted* her to testify, and also repeatedly said it knew *mother* wanted to testify. It was on that basis the juvenile court granted counsel's request for a contested evidentiary hearing and scheduled a half-day hearing. At no time did mother or her counsel express any misunderstanding about the scope of the contested hearing the court had

9

calendared.  On the contrary, as explained, *they* were the ones who requested it.

Because the record does not support mother's claim of legal error, we could end our analysis there.  But given the weighty interests at stake when a juvenile court terminates parental rights, interests that mother stresses throughout her briefing and with which we agree, we also comment briefly on additional reasons we must affirm the court's order terminating parental rights.

One is that, even if we agreed the record showed that the court gave mother false promises it would not terminate her parental rights at the July 24 hearing, mother hasn't presented us with any legal basis to disturb the order terminating her rights.  She does not cite or discuss any legal authority authorizing an appellate court to reverse an order terminating parental rights on such a basis.  The precise nature of the claimed error is not even clear:  for example, she makes no claim that her due process rights were in any way impaired by what transpired at the July 6 reconsideration hearing, she requested the July 24 hearing, and she had actual notice of the hearing because she was present in court when the matter was scheduled.  The absence of any legal authority supporting mother's bid for reversal compels us to affirm the court's orders.  That is because "[i]n order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146.)  "Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review."  (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.)

Mother also has failed to persuade us she was prejudiced by the court's comments at the July 6 hearing. She was represented at all times by counsel who presumably *advised her* of the need to present evidence to contest the termination of her parental rights, because that is what her lawyer requested after conferring with her off the record. That alone renders any error in the court's prior comments harmless. In addition, despite mother's voluntary absence from the second hearing, the social worker, as noted, was present and available to testify at the July 24 hearing. And finally, we have reviewed the record and conclude that it would not support a finding in mother's favor on the parental benefit exception. (S*ee In re J.R.* (2022) 82 Cal.App.5th 526, 531.) The record does not show mother's relationship with the children was anything "more than a mere friend or playmate" (*In re B.D.* (2021) 66 Cal.App.5th 1218, 1230). Mother clearly loves her children but the record does not show that, by the time of the termination hearing, either child had a "substantial, positive emotional attachment" to her or that it would be harmful to sever their relationship. (See *Caden C.*, *supra*, 11 Cal.5th at pp. 632-633; *In re J.D.* (2021) 70 Cal.App.5th 833, 854.) Extended discussion is unnecessary. Mother's assertion she could adduce additional evidence to satisfy the exception is unexplained and contrary to the record.

## DISPOSITION

The order terminating parental rights is affirmed.

_____

                        STEWART, P.J.

We concur.

_____

RICHMAN, J.

_____

MAYFIELD, J.*

*In re A.S.* (A168854)

_____

    * Judge of the Mendocino Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.